## BROWN *et al. v.* ANDERSON *et al.*

Where two persons who were stockholders in a corporation and also holders of its bonds, which were secured by a first lien upon all of its property, in order to obtain a loan for the corporation and "to fully protect" the

lender from loss, agreed to waive the lien of such bonds in favor of the lender, stipulating as follows: "Should there at any time come up a conflict between the bondholders of said company and its unsecured creditors, we agree that so far as our bonds are concerned that the said notes and all renewals of the same shall take precedence over our bonds until said notes are fully paid. It is, however, distinctly understood that said bonds are not to lose their status with reference to the other bonds of said corporation, or that they are, so far as any other unsecured debts of said corporation are concerned, to be placed in any different relation from which they now stand. And it is further distinctly understood, that so soon as said notes and all renewals thereof are paid, that said bonds are to have the same relation to debts of said corporation which they now have and which the remaining bonds of said corporation have," and the bonds were delivered into the possession of the lender, and subsequently the entire property of the corporation was sold at a foreclosure sale and purchased by a committee of reorganization representing the lender and certain of the bondholders other than the persons above referred to, there was no such fiduciary relation existing between the lender and the depositors of the bonds as to charge the lender's interest in such purchase with any trust in favor of the depositors; and there was no error in refusing to grant an injunction to prevent such committee from delivering possession of the property to the lender.

Argued December 11, 1897. — Decided April 11, 1898.

Petition for injunction. Before Judge Lumpkin. Fulton county. September 23, 1897.

*John L. Hopkins & Sons* and *Julius L. Brown*, for plaintiffs.
*King & Anderson* and *Dorsey, Brewster & Howell*, for defendants.

SIMMONS, C. J. The Georgia Mining, Manufacturing & Investment Company issued 500 bonds of $1,000 each. The assets of this company were the stocks of other companies which it had purchased. It borrowed of the Lowry Banking Co. large sums of money. Joseph E. and Julius L. Brown were the owners of a large number of the bonds issued by the company. To secure the payment of the money borrowed from the bank, these gentlemen deposited with the bank 240 bonds under the following agreement: "For and in consideration of the advantages which result to us as stockholders of the Georgia Mining, Manufacturing & Investment Company by the action of the Lowry Banking Company of Atlanta in loaning the said company one hundred and fifty thousand dollars upon its notes to be paid as follows: [giving the amounts and dates of

maturity of various notes], we the undersigned owners of some of the bonds of the Georgia Mining, Manufacturing & Investment Company, desiring to fully protect the said Lowry Banking Company of Atlanta from any loss, hereby agree to waive the lien of our bonds as follows, to wit: two hundred bonds of one thousand dollars each owned by Joseph E. Brown, and forty bonds of one thousand dollars each owned by Julius L. Brown, in favor of said notes of said company now held by the Lowry Banking Company of Atlanta, and of all renewals of the same. That is to say, should there at any time come up a conflict between the bondholders of said company and its unsecured creditors, we agree that so far as our bonds are concerned that the said notes and all renewals of the same shall take precedence over our bonds until said notes are fully paid. It is, however, distinctly understood that said bonds are not to lose their status with reference to the other bonds of said corporation, or that they are, so far as any other unsecured debts of said corporation are concerned, to be placed in any different relation from which they now stand. And it is further distinctly understood, that so soon as said notes and all renewals thereof are paid, that said bonds are to have the same relation to debts of said corporation which they now have and which the remaining bonds of said corporation have." When the bonds were issued by the company, a deed of trust upon the property of the company was given to a trustee. In this deed it was stipulated that, in case of default for three months in the payment of interest, the trustee, upon the written request of the holders of one fourth in amount of the outstanding bonds, should, after advertisement, sell the stocks at public sale for the best price that could be obtained. The company having made default of more than three months in the payment of interest, the holders of more than one fourth of the bonds applied to the trustee to have the stocks sold. In compliance with this request, the trustee advertised and sold the property, and it was bought in by a committee of reorganization. The personal representatives of Joseph E. Brown and Julius L. Brown in his own right filed an equitable petition in which it was alleged that the bank was one of the real purchasers

at the sale, and that the committee of reorganization was about to deliver to the bank its portion of the stocks so purchased. They prayed for an injunction restraining the committee from delivering the stocks to the bank or to any other person except petitioners; that a receiver be appointed; that defendants be required to transfer to petitioners the stock to which they are entitled; that defendants be decreed to be trustees for petitioners when they made the purchase, so far as affected petitioners' interests; and for general relief. After hearing the petition and affidavits for plaintiffs and the answers of the defendants, the court refused to grant the relief prayed for, and plaintiffs excepted.

It was claimed here by the learned counsel for the plaintiffs in error, that, under the contract above recited, the Lowry Banking Co. became the fiduciary agent or trustee of petitioners, and as such agent or trustee was not entitled to its proportion of the stock purchased at the trustee's sale; that such stock belonged to petitioners and it was the duty of the bank to transfer it to them. The principle invoked by counsel for plaintiff in error is, that "Whenever a trustee or person clothed with any fiduciary character takes advantage of the relation, and by means of it acquires the title or use of the trust property, or makes a profit or advantage to himself out of the trust and confidence, then a constructive trust is impressed upon such property, profits or proceeds in his hands, in favor of the original beneficiary." We fully agree with him in the correctness and the justness of the principle announced; but after a long and close study of the voluminous record, we have reached the conclusion that the principle does not apply to the facts of the case. There is nothing in the record which shows that the bank, in accepting the contract made and the deposit of the bonds thereunder, became the fiduciary agent or trustee of the Browns, or that it was its intention to do so. The Georgia Mining, Manufacturing & Investment Co. owed the bank a large sum of money. The Browns, to secure the bank, deposited with it certain bonds, and agreed that, as to the debts mentioned, the bank should take the place of the Browns as bondholders; "so far as our bonds are concerned, that the said notes and all re-

3

newals of the same shall take precedence over our bonds until said notes are fully paid." They had a lien for the payment of their bonds, and this they waived in favor of the bank in so far as was concerned the debt of the company to the bank. The deposit of the bonds with the bank did not create the relation of a beneficiary and trustee. It was more in the nature of a collateral security. There was no confidence or trust reposed in the bank. The deposit was one purely of contract. When, therefore, the company defaulted on its interest and its stocks were sold, the bonds became worth but little, and the bank, in order to save a portion of its debt, had a right to become one of the purchasers of the stocks. The bank, having purchased the stocks either directly or indirectly, was under no legal, equitable or moral duty to transfer them to the Browns until either the company or the Browns had paid it the amount loaned the company which the bonds were given to secure. The record discloses that the company was almost or quite insolvent. It could not pay more than a small part of the debt which it owed the bank. The Browns did not tender or offer in any way to pay the debt due the bank, their only tender being that of a proportionate part of the price paid at the sale for the stocks, a small amount in comparison with the debt due the bank. Under these facts, it seems to us that it would be inequitable and unjust to compel the bank to transfer to petitioners the property purchased at the trustee's sale, and thus lose practically all of the one hundred and fifty or one hundred and seventy-five thousand dollars which had been loaned to the company and for which they had received the bonds of petitioners as security. In our opinion, before the petitioners can force the bank to transfer the property so purchased, they must at least tender or pay the amount due the bank. We think, therefore, that the court did not err in refusing the injunction and other relief prayed.

*Judgment affirmed. All the Justices concurring.*